## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CODY A. WOLFE**                                                                                    **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO.  3:22-CV-P183-GNS**

**LMDC** *et al.*                                                                                **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action.  The matter is before the

Court for screening of Plaintiff Cody A. Wolfe's amended complaint (DN 13) and second amended

complaint (DN 14) pursuant to 28 U.S.C. § 1915A.  For the reasons set forth below, the Court will

dismiss some claims and allow others to proceed.

### I.

Plaintiff is incarcerated as a pretrial detainee at the Louisville Metro Department of

Corrections (LMDC).  In the complaint, Plaintiff asserted claims against LMDC; LMDC Director

Dewayne Clark; and LMDC Officer D. Bullock.  Plaintiff sued Defendants Clark and Bullock in

both their official and individual capacities.  Upon review of the complaint pursuant to 28 U.S.C.

§ 1915A, the Court dismissed Plaintiff's claims against LMDC and Defendant Clark and his

official-capacity claim against Defendant Bullock but allowed a Fourteenth Amendment deliberate

indifference to safety claim to proceed against Defendant Bullock in her individual capacity.

(DN 7).[1]

In Plaintiff's amended complaint, Plaintiff adds D. Arnold as a Defendant and makes new

allegations against LMDC.  Plaintiff states as follows:

---

[1] Plaintiff's allegation against Defendant Bullock is that she informed other inmates at LMDC what crimes he had been charged with and that, as a result, he was attacked by four inmates and sustained injuries which required him to be taken to the hospital.

On March 16 around 10:30-11:15 a.m. Officer D. Arnold told another inmate about my charges. I was on the 4th floor, dorm 7, cell-7 and had a neighbor in cell 6 with the last name Tooley. I was on my hour out to take shower since were on 23 and 1 lockdown and inmate Tooley asked Officer D. Arnold "hey, why are you ignoring us and acting different?" Officer D. Arnold pointed at my cell as he was putting me up for my hour out and mouthed the words "charges" to inmate Tooley. Inmate Tooley said to him "what are you talking about?" Officer D. Arnold said to him, "I will tell you when I can tell you. I can't talk about it right now." After Officer D. Arnold walked away, inmate Tooley said "hey he doesn't like you man, what Arnold talking about with your charges?" I told inmate Tooley it's the same reason I got jumped by four individuals because of Officer D. Bullock exposed me in front of everyone. I said "Why what did he say?" Inmate Tooley said "he pointed at your cell and mouthed the word charges and said he will tell me about it later." Inmate Tooley would never have known about my situation with my charges if Officer D. Arnold wouldn't have brought this to his attention. I was mad about it, and the fact that I had to explain myself to another inmate about my situation after what I just went through. I seen Officer D. Arnold the next time he worked the floor and confronted him about telling other inmates my charges and I wouldn't go to my cell until I spoke with a sgt. Two officers came in the dorm and asked, "What's the problem?" I explained to them what he had done and that I wanted to speak to a sgt. about it. He denied everything and I never got to speak to a sgt. I have put in two grievances about it and asked to speak to p.s.u about the situation. . . . Every time he works the floor that I'm on he gives me smurks and gives me and the other inmates corpral punishment as a whole for example denying us soap, toilet paper, newspaper, ect., anything the regular officers help us with on a regular basis, just to make a point. Other inmates have said to me, "he didn't treat us this way until they moved you in the dorm Cody" it's noticeable. We got shook down for jumpsuit and bed lennings two weeks ago, and he threw away brand new items I just paid for, and went overboard with my room search instead of just looking for extra sheets, towels, and jumpsuits. I feel a sense of retaliation for me persuing the issue. My rights are being violated, and HIPPA law my exposing my charges. This is the second correctional officer that has done this to me.

(DN 13).

Plaintiff then turns to his "new" claims against LMDC and states:

I am suing LMDC for not housing me properly because of my charges. On Feb. 12th, 2022, a correctional Officer D. Bullock exposed my charges to other inmates and broke confidentiality. In result, I was jumped and received bodily injuries and was sent to hospital. LMDC was suppose to have housed me so I wouldn't be in any harm because of my charges, but failed to do so. . . . The reason why I feel I have a claim against LMDC is classification neglected to house me properly, and I was injured [as a result]."

(DN 13).

In the second amended complaint, Plaintiff seeks to add Louisville Metro Government (LMG) as a Defendant.  He repeats the above allegations regarding his housing and classification and then specifically states that, due to his charges, he should have been housed in a single cell for his safety.  He then states that LMG has a policy or custom of classifying inmates with sex offense charges "differently and normally in solitary confinement (single cell) dorms. away from other inmates. Out of harm's way.  That's the normal policy.  No one can hurt them cause of their charges."[2]  He continues: "Connect the policy to the municipality. The classification system LMDC/[LMG] is to house sex offenders out of harm's way.  Classification is who's responsible for that policy . . ."  Plaintiff then states:

> Show that his particular injury was incurred due to execution of that policy – my injuries and incident occurred due to me being in an "open dorm" environment.  A revolving door to new inmates to come in and learn of what my charges are, Judge me, and cause me bodily harm.  I was not housed in a single cell and out of harms way.  I was not "classified" (policy) properly by [LMG]/Jefferson County (municipality).  In result I was sent to the hospital with bodily injuries.

In conclusion, Plaintiff states:

> [LMG]/Jefferson County failed to give me equal protection of the laws.  My protection/safety was compromised due to housing in an open dorm environment and my charges exposed by a correctional officers of the Law, under oath, who in which compromised myy safety in a place of business and caused me to be injured and sent to the  hospital.  [LMG]/Jefferson County is responsible for that violation.

(DN 14).

As relief in both the amended complaint and second amended complaint, Plaintiff seeks damages.

---

[2] In its initial review of the complaint, the Court explained that Plaintiff's official-capacity claims were actually against the LMG and dismissed those claims because Plaintiff did not claim that any violation of his constitutional rights was the result of a custom or policy implemented or endorsed by LMG.  The Court stated that to demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

## III.

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446

U.S. 635, 640 (1980).  "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A.  Defendants LMDC and LMG and Official-Capacity Claim against Defendant Arnold

As the Court explained in its prior Memorandum Opinion and Order in which it conducted an initial review of the complaint, LMDC is not an entity subject to suit under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Rather, the claims against it are actually against the LMG as the real party in interest.  *Id.*  ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.").  In addition, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Thus, Plaintiff's official-capacity claim against Defendant Arnold is actually against the LMG as well.

As the Court also set forth in its prior Memorandum Opinion and Order, when a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his

particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Despite Plaintiff's attempt to hold the LMG liable under the standard set forth above in his amended complaint and second amended complaint, his claim still fails because in these pleadings Plaintiff states that the actions about which he complains - inappropriate housing and classification in light of his charges – were actually taken in violation of LMG policy. Indeed, Plaintiff goes to great lengths to explain that the "normal policy" was to place inmates with charges like his in single cells to ensure these inmates' safety.

Moreover, to the extent that Plaintiff claims that LMG is liable to him based upon the alleged unconstitutional actions of its employees - whether it be Defendant Bullock, Arnold, or someone else - his claim still fails. *See Monell*, 436 U.S. at 691 ( "[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

For these reasons, the Court will dismiss Plaintiff's claims against LMDC and LMG and his official-capacity claim against Defendant Arnold for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

The Court construes the amended complaint as asserting a right to informational privacy claim,[3] a Fourteenth Amendment claim for deliberate indifference to Plaintiff's safety, and a First Amendment retaliation claim against Defendant Arnold in his individual capacity.[4]

Moreover, upon further review of the review of the complaint, the Court also construes it as asserting a right to informational privacy claim against Defendant Bullock in her individual capacity.

Upon consideration, the Court will allow these claims to proceed. In allowing these claims to proceed, the Court passes no judgment upon the merit of these claims or the ultimate outcome of this action.

### IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's claims against LMDC and LMG and his official-capacity claim against Defendant Arnold are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court** is **DIRECTED** to **add D. Arnold as a Defendant in this action.**

---

[3] The Sixth Circuit has recognized an informational privacy interest of constitutional dimension where the release of personal information could lead to bodily harm. *See, e.g.*, *Kenny v. Bartman*, No. 16-2152, 2017 U.S. App. LEXIS 16640, at *17 (6th Cir. May 19, 2017).

[4] Although Plaintiff states that Defendant Bullock violated his rights under "HIPPA" by "exposing" his charges, the Health Insurance Portability and Accountability Act (HIPAA) is not applicable because it prohibits the unauthorized disclosure of medical information by certain entities.

The Court will enter a Revised Service and Scheduling Order to govern the development

of this action.

Date:  July 1, 2022

Greg N. Stivers, Chief Judge
United States District Court

cc:      Plaintiff, *pro se*
         Defendants
         Jefferson County Attorney
4416.011

8